UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

AMAYA BELKI,

                    *Plaintiff*,

    – against –

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                    *Defendant*.

---

**MEMORANDUM & ORDER**
25-cv-00735 (NCM)

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Amaya Belki brings this action against defendant Commissioner of the Social Security Administration ("Commissioner") seeking judicial review of the Commissioner's decision on plaintiff's application for disability insurance benefits and supplemental social security income benefits. Compl. ¶¶ 1, 4, 5, ECF No. 1. Before the Court is plaintiff's motion for judgment on the pleadings ("Motion"), ECF No. 16-1; and the Commissioner's cross-motion ("Cross-Motion"), ECF No. 19-1. For the reasons stated below, plaintiff's motion is **DENIED**, and the Commissioner's Cross-Motion is **GRANTED**.

## BACKGROUND

### I.    Factual Background

Plaintiff is a woman in her mid-50s. Joint Stipulation of Facts ("Joint Stip.") 2, ECF No. 21. Plaintiff has worked as a babysitter from 1998 to 2008, at an airport serving in multiple roles between 2008 and 2015, as a supermarket cashier in 2015, in food

1

service in 2016, and as a sales representative from 2017 to 2018, among other roles. R. 343.

Plaintiff applied for disability insurance and supplemental security income on February 25, 2022, alleging a disability onset date of February 1, 2019. R. 291–317, 356 ECF No. 14[1]; *see also* Joint Stip. 2. The basis for plaintiff's application was arthiritis, swelling in her hands and feet, allergies to dust, and asthma. R. 356; *see also* Joint Stip. 2. The Commissioner denied plaintiff's application on Augusut 2, 2022, R. 126–33, and again on Janaury 25, 2023, R. 143–68. *See* Joint Stip. 2. Plaintiff requested a hearing before an administrative law judge ("ALJ"), R. 171–72, which was held on October 5, 2023, R. 47–77. Plaintiff appeared and testified, represented by counsel. *See* Joint Stip. 2.

## II.    Medical Evidence

The administrative record of plaintiff's benefits application included treatment notes from 11 medical professionsals: (1) Primary care physician, Dr. Mark Joseph, R. 674–878; (2) Ear, nose, and throat ("ENT") specialists, Dr. Nelsan Alcarez, Dr. Andres Albaitero, Dr. Yelena Kopyltsova, and Dr. Anthony Del Signore, R. 454–665, 886–946, 1101–116; (3) Consultative medical examiners, Dr. Chiam Shtock, R. 667–71, and Dr. Lyudmila Trimba, R. 880–84; (4) State medical consultants, Dr. S. Jacob, R. 88–99, and Dr. D. Schwartz, R. 100–25; (5) Pulmonologist, Dr. Sergio Martinez, R. 947–82; and, (6) Podiatrist, Toru Shimoji, R. 987–96. *See also* Joint Stip. 7–16.

---

[1]    Throughout this opinion, page numbers for the Certified Administrative Record ("R.") refer to the numbers found in the bottom right corner of each page, rather than the page numbers assigned by the Electronic Case Filing system ("ECF"). All other page numbers for docket filings refer to the page numbers assigned by ECF.

Two consultative medical examiners, Drs. Shtock and Trimba, supplied opinions relevant to the parties' dispute. On July 20, 2022, during an examination, Dr. Shtock observed that plaintiff appeared in no acute distress, had a slow gait, had difficulty walking on her heels and toes, had a full squat and a normal stance, did not need help getting on and off the examination table, and could rise from a chair without difficulty. Joint Stip. 10. Dr. Shtock also observed that plaintiff had full range of motion in the ankles, and 4+ to 5/5 strength in the lower extremities. Joint Stip. 10–11. Plaintiff notified Dr. Shtock that she was able to cook independently and bathe, groom, and dress herself daily. R. 668. Her son assisted with cleaning, laundry, and grocery shopping. R. 668. "Dr. Shtock opined that [p]laintiff needed to avoid respiratory irritants, dust, smoke, pollen, and known asthmatic triggers," and "to avoid activities that required heavy exertion and unprotected heights." Joint Stip. 11. Approximately one and a half weeks later, state agency medical consultant Dr. Jacob reviewed plaintiff's medical records, including Dr. Shtock's examination, and concluded that "there was no medically determinable impairment to support [p]laintiff's claims of [chronic obstructive pulmonary disease] or lower extremity pain, [and] arthritis." Joint Stip. 11.

On January 16, 2023, Dr. Trimba conducted a consultative medical examination of plaintiff at the behest of the Social Security Adminsitration. Joint Stip. 12. Dr. Trimba observed that plaintff appeared in no acute distress, had a normal gait and stance, could take a few steps on her heels and toes, and could squat halfway down despite reporting knee and ankle pain. Joint Stip. 12. Dr. Trimba also observed plaintiff did not need help changing for the examination or getting on and off the examination table, and could rise from a chair without difficulty. Joint Stip. 12. Dr. Trimba further observed plaintiff had full range of motion of the ankles bilaterally, stable and nontender joints, and despite

3

experiencing pain with ankle movement, plaintiff "had 5/5 strength in her . . . lower extremeties with no sensory deficits." Joint Stip. 12. With respect to plaintiff's reported asthma, Dr. Trimba found plaintiff's chest and lungs were clear of auscultation. Joint Stip. 12. Plaintiff reported she was able to cook, bathe, dress, and groom independently but continued to require assistance with chores like cleaning, laundry, and grocery shopping. R. 882.

Based on her examination, Dr. Trimba opined that plaintiff "had mild to moderate limitations in her ability to stand and walk for a prolonged time. She had moderate limitations in her ability to climb steps, push, pull, or carry heavy objects. [And, s]he needed to avoid squatting and kneeling along with smoke, dust, or any other known respiratory irritants." Joint Stip. 12–13. Approximately one and a half weeks later, state agency medical consultant Dr. Schwartz reviewed plaintiff's medical record, including Dr. Trimba's examination and report, and found plaintiff's physical impairments were medically determinable non-severe. Joint Stip. 13.

In June 2023, planitiff established treatment with a podiatrist for right ankle pain. Joint Stip. 14. Podistrist Shimoji diagnosed plaintiff with retrocalcaneal exotosis of the right foot, brusitis in the right foot, and right ankle pain. R. 988. She received three steriod injections throughout June, which provided her with two weeks of pain relief. Joint Stip. 14. In June and August, plaintiff received physical therapy treatment. Joint Stip 14; R. 993, 996. Podiatrist Shimoji prescribed plaintiff with an NSAID topical cream and ibuprofen, and recommended shoe gear to manage her pain. Joint Stip. 14. By August, "[a] physical examination revealed bony prominence of the insertion of the tendon" at the right Achilles. Joint Stip. 15. There are no podiatry treatment records after August 2023. *See* R. 984–96.

4

The record also includes treatment notes from plaintiff's primary care physician, Dr. Joseph, beginning in December 2010 and through December 2022. In 2011, Dr. Joseph diagnosed plaintiff with asthma. Joint Stip. 6. Between 2011 and 2018, plaintiff managed her asthma symptoms with treatment from Dr. Joseph. Twice in 2018, plaintiff sought emergency care for sinusitis, and during one of those visits, she also sought treatment for vertigo, dizziness, and nausea. Joint Stip. 6. Each time plaintiff was discharged with medication. R. 1004–08, 1040. She reported having two asthma attacks daily and treated them with an Albuterol inhaler and nebulizer. Joint Stip. 3. Relevant to plaintiff's right ankle impairment, she first reported lower right extremity pain in 2013. R. 704; *see* Joint Stip. 7. Dr. Jospeh noted mild osteoarthiritc changes over the year. Joint Stip. 7. After an x-ray examination, Dr. Joseph identified osteoarthiris generalized and advised plaintiff to take "proper care of her feet." R. 841; Joint Stip. 7. Despite reporting increased pain over the years and difficulty standing and walking, she did not receive further medical treatment, but managed the pain with over the counter pain relievers. Joint Stip. 3.

Starting in November 2021, plaintiff met with ENT specialists about complaints of bilateral nasal congestion. Joint Stip. 8. In July 2022, she was diagnosed with moderate nose polyps, and in October, underwent nasal polyps resection. Joint Stip. 9, 11. Plaintiff reported her nasal congestion continued despite otherwise normal findings by an ENT specialist. Joint Stip. 13. Between March and July of 2023, examinations by pulmonologist Dr. Martinez found "clear lungs to auscultation with no wheezing." Joint Stip. 13–14. Plaintiff reported her symptoms were well managed with an inhaler and Spiriva. Joint Stip. 14.

### III.    October 2023 Administrative Hearing

At the October 2023 hearing before the ALJ, plaintiff testified that she has been unable to work since February 2019, following the two emergency room visits in 2018. R. 61–62, 66–68. Plaintiff testified that since the emergency room visits, she has had shortness of breath daily, inability to walk for long periods of time, and mucus in her lungs. R. 62–63. Plaintiff uses an inhaler and nebulizer and sees a lung specialist for treatment. R. 62. Relevant to the parties' dispute, plaintiff testified she has a displaced bone in her right ankle, which is swollen and painful. R. 64. She tesfied that she can only sit for 15 minute increments, but when she attempts to stand up, she gets dizzy and has to support herself with her left leg because of her right ankle pain. R. 64–65. She testified that due to her ankle pain, she can only stand for five minutes and walk one block. R. 65. She does not use mobility aids for walking. R. 65.

Plaintiff testified that she began treatment for the right ankle pain in February 2023. R. 66. Plaintiff stated she was undergoing physical therapy and taking medication, which did not relieve the pain entirely. R. 64. She testified that her doctor recommended her for surgery but wanted to wait for the completion of physical therapy before scheduling it. R. 64. Further, plaintiff testified that her two children assisted her with grocery shopping and household chores, such as cleaning because cleaning products agitated her asthma. R. 65–66.

Vocational expert ("VE") Andrew Vaughn also testified at plaintiff's hearing. R. 15. The ALJ presented VE Vaughn with a hypothetical individual of the same vocational profile as plaintiff—i.e., age, education, work background, ability to perform light work activity subject to certain functional restrictions including, "limited to occassional climbing stairs and ramps, balancing and stooping, can never kneel, squat, climb ladders,

6

scaffolds, ropes, or be around unprotected heights, dangerous machinery, crouch, or crawl, . . . [and] avoid exposure to dust, smoke, fumes, chemicals, gases, and respiratory irritants." R. 70–71. VE Vaughn opined that based on these restrictions plaintiff's past work as a deli cutter, slicer, and ticket taker "could be performed." R. 71. After the ALJ inquired if there were additional jobs that could be performed, VE Vaughn provided other sedentary jobs with a Specific Vocational Preparation ("SVP")[2] factor of two—a non-postal worker mail clerk, messenger, and assembler. R. 72–73. The ALJ inquired if these jobs could be performed given the climbing restrictions. R. 72. VE Vaughn conceded that the messager role could not be performed assuming the messenager might need to climb stairs to access public transportation for work. R. 72. The ALJ asked VE Vaughn to "[a]ssume the hypothetical individual is limited to sedentary work with the same non-exertional restrictions." R. 73. The VE opined that there were jobs consistent with the DOT and SCO classifications for that individual and those jobs included a ticket counter, election clerk, and document preparer. R. 73.

At the conclusion of the hearing, the ALJ directed plaintiff's counsel to send additional documentation to fill gaps in plaintiff's medical treatment history. R. 75–76; *see* R. 67–69.

## IV.    Procedural History

On March 14, 2024, the ALJ issued a written opinion finding that plaintiff is not disabled pursuant and thereby not entitled to disability insurance benefits or social

---

[2]    Specific Vocational Preparation is defined as the amount of time necessary for a "typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. SVP level 2 jobs are defined as those requiring anything beyond short demonstration, up to and including 1 month." *Richard R. v. Kijakazi*, 691 F. Supp. 3d 508, 515 (D. Conn. 2023).

security insurance benefits. Joint Stip. 15. Plaintiff requested a review of the ALJ's decision on March 20, 2024, and on August 13, 2024, plaintiff's request was denied by the Appeals Counsel, R. 1–8, rendering the ALJ's March 14, 2024 decision the final decision of the Commissioner. The instant lawsuit, seeking judicial review of the ALJ's decision, was filed on January 24, 2025. *See generally* Compl.

## STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see* Fed. R. Civ. P. 12(c) (allowing courts to enter a judgment on the pleadings). Nonetheless, federal judicial review is "limited." *Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 154 (2d Cir. 2024).[3] Reviewing courts "do not substitute" their own "judgment for the agency's" or review the record de novo. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). Instead, "[w]e conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Rubin*, 116 F.4th at 154.

In conducting this review, courts must determine (1) "whether the correct legal standards were applied," and (2) "whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Rucker v. Kijakazi,* 48 F.4th 86, 90–91 (2d Cir. 2022).

---

[3]    Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

Whether the record contains "substantial evidence" depends on whether "a reasonable mind might accept" the evidence "as adequate to support" the ALJ's determination. *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (explaining that "[t]he phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding"). The "threshold for such evidentiary sufficiency is not high"; it requires only that the record contain "more than a mere scintilla" of evidence. *Id.* at 103. The court must uphold the Commissioner's conclusion so long as it is supported by a "rational interpretation" of the evidence. *Rubin*, 116 F.4th at 155. However, courts must still "examine contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.*

"Before determining whether the Commissioner's final decision is supported by substantial evidence[,] the court must first be satisfied that the ALJ completely developed the administrative record." *Kelly v. Comm'r of Soc. Sec.*, No. 20-cv-05318, 2024 WL 5120051, at *9 (E.D.N.Y. Dec. 16, 2024). The ALJ has a "well-established" obligation to investigate and develop the record, even where a claimant is counseled—this "has been described as a bedrock principle of Social Security law." *Id.* Accordingly, where the presiding ALJ did not apply the correct legal standard or sufficiently develop the record, a court may remand the case for further proceedings. *See Sczepanski v. Saul*, 946 F.3d 152, 162 (2d Cir. 2020); *Daniels v. Kijakazi*, 617 F. Supp. 3d 180, 195 (S.D.N.Y. 2022).

**DISCUSSION**

### I.     Statutory and Regulatory Disability Benefit Requirements

The Social Security Administration administers social security disability insurance benefits to eligible applicants pursuant to the Social Security Act ("SSA"). *See generally* 42 U.S.C. § 301 *et. seq*. To secure benefits, an applicant must demonstrate, among other

things, that he is disabled: that his impairment or combination of impairments renders him unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner, acting through a presiding ALJ, assesses whether an applicant meets the statutory definition of disabled by undertaking a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4). The Commissioner only advances to the next step where a determination of an applicant's disability status cannot be made at that stage. *Id.*

The first step is to evaluate the applicant's work activity; a disability determination will be denied where an applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the Commissioner "considers the medical severity of the claimant's impairment or combined impairments." *Rubin*, 116 F.4th at 147 (citing 20 C.F.R. § 404.1520(a)(4)(ii)). The third step is a determination on whether the applicant's impairments "meets or equals" one of the listings in Appendix 1 of Part 404, Subpart P ("Listed Impairment"). 20 C.F.R. § 404.1520(a)(4)(iii). If the Commissioner finds there is a combination of impairments, not all of which are severe, the ALJ will consider the combined effect of all of the impairments. 20 C.F.R. § 404.1523(c). If the applicant's impairments do not meet or equal a Listed Impairment, the Commissioner determines the claimant's residual functional capacity ("RFC"), which is the claimant's ability to function in a workplace despite medical limitations and "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). At step four, the Commissioner assesses whether the claimant can perform past relevant work when considering the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv).

10

If the claimant cannot perform his past relevant work, the fifth and final step is to consider whether an applicant, given his RFC, age, education, and work experience, can perform other work. 20 C.F.R. § 404.1520(a)(4)(v). The claimant "bears the burden of proof in the first four steps of the sequential inquiry." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). However, at step five "the burden shifts, to a limited extent, to the Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do." *Rubin*, 116 F.4th at 148.

## II.    The ALJ's Determination

At step one, the ALJ found that the plaintiff had not engaged in any substantial gainful activity since February 1, 2019. R. 18. At step two, the ALJ found that plaintiff's asthma and chronic obstructive pulmonary disease were severe. R. 18. Relevant to plaintiff's argument on appeal, the ALJ also found plaintiff's osteoarthritis, retrocalcaneal bursitis exostosis of the right ankle/foot (hereinafter "right ankle impairment"), obesity, and nasal polyps were non-severe. R. 18. Based on the record before her, the ALJ determined that plaintiff's right ankle impairment had only been diagnosed and treated since June 2023, and thus, "there is no evidence retrocalcaneal bursitis exostosis of the right ankle/foot satisfies the 12-month duration requirement to be considered a severe impairment." R. 18. The ALJ noted that treatment for plaintiff's right ankle impairment commenced after her date last insured of March 31, 2023, and that the impairment would likely be considered non-medically determinable. R. 18. The ALJ determined that the non-severe impairments cause no more than a de minimis limitation for basic work activity. R. 18–19.

At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meet or medically equals the severity of one of the

11

listings in Appendix 1 of Part 404, Subpart P, 20 C.F.R. § 404.1520(a)(4)(iii). R. 19. The ALJ gave particular attention to the Listings in Sections 3.02 and 3.03 (asthma), and Section 12.04 (depressive, bipolar and related disorders). R. 19–20.

At step four, the ALJ determined that plaintiff has the RFC to perform light work,[4] except that plaintiff could engage in "occasional climbing stairs/ramps, balancing, and stooping but can never climb ladders/scaffolds/ropes, kneel, squat, crouch, crawl, or be around unprotected heights or dangerous machinery. She must avoid exposure to dust, smoke, fumes, chemicals, gases, pollen, and respiratory irritants." R. 20.

To reach her conclusion that plaintiff had the RFC to perform light work, the ALJ considered "(1) whether there is an underlying medically determinable physical . . . impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected" to cause the alleged symptoms; and (2) once a physical impairment could be reasonably expected to produce the pain or other symptoms, the ALJ next evaluated the "intensity, persistence, or [functionally] limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." R. 20. As a baseline determination, most of the medical treatment for the alleged disabilities began in 2021, which was inconsistent with the alleged onset disability date of February 1, 2019. R. 24.

---

[4]    As defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 24. While the "totality of the evidence" does demonstrate the presence of "a combination of impairments that are severe" and that "place limitations on the claimant's ability to function[,] . . . these limitations do not preclude" plaintiff's ability to "carry out light work activity." R. 24. At this step, the ALJ determined that plaintiff is unable to perform any past relevant work. R. 27.

At step five, after considering plaintiff's vocational profile and RFC, the ALJ determined that plaintiff could perform work that exists in significant numbers in the national economy, including non-postal worker mail clerk, deli cutter, and assembler. R. 28–29. Accordingly, the ALJ concluded that from February 1, 2019 through the date of the decision on March 14, 2024 plaintiff was not disabled within the meaning of the SSA. R. 30.

### III.   The Court's Analysis of the ALJ's Determination

Plaintiff appeals the ALJ's decision on three grounds: (1) as a threshold matter, plaintiff asserts the ALJ improperly applied the 12-month duration requirement to plaintiff's right ankle impairments; (2) the ALJ gave Dr. Trimba's medical opinion evidence improper weight and failed to properly evaluate medical opinion evidence; and (3) the ALJ failed to properly evaulate plaintiff's credibility as to her subjective symptom

13

testimony. Mot. 12–21. The Commissioner contends that there is substantial evidence to support the ALJ's findings. Cross-Mot. 8–22.

Here, the central questions concern whether the ALJ: (1) properly applied the legal standard under 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); (2) properly evaluated the medical evidence; and (3) properly evaluated plaintiff's credibility. For the reasons stated below, the ALJ's findings are supported by substantial evidence and, to the extent an incorrect legal standard was applied, the error was harmless.

### A. Application of the Durational Requirement

Plaintiff argues that the ALJ misapplied the legal standard when assessing the durational requirement for determining disability. Specifically, the ALJ failed to consider whether her right ankle impairment could have lasted "for a continuous period of not less than twelve months," 42 U.S.C. § 423(d)(1)(A), even if it had not yet lasted for that duration. *See* Mot. 12–16. Instead, the ALJ concluded that the impairment did not satisfy the 12-month duration requirement because plaintiff established treatment in June 2023, less than 12 months from the date of the ALJ's decision in March 2024. R. 18. Plaintiff contends that the ALJ's interpretation that 12 months must elapse prior to the ALJ's determination contravened the language of the statute, which contemplates an impairment that "has lasted *or* can be expected to last 12 months." Mot. 13 (quoting 42 U.S.C. § 1382c(a)(3)(A). The Commissioner argues that the ALJ properly found the right ankle impairment failed to satisfy the durational requirement because plaintiff only sought treatment for her right ankle and foot pain briefly in 2023 and the pain "largely resolved." Cross-Mot. 10. The Court agrees with plaintiff that the ALJ improperly applied

14

the durational requirement when determining whether she met the statutory definition of disability under 42 U.S.C. § 423(d)(1)(A).

The ALJ, in relevant part, noted that plaintiff did not seek treatment for ankle and foot pain until June 2023, "which is less than 12 months of this adjudication," R. 25, and, thus, plaintiff's "right foot pain does not . . . satisfy the durational requirement yet to be considered a severe impairment." R. 26. Consistent with plaintiff's argument, the ALJ misapplied the durational requriement. The ALJ should have considered whether the impairment could have lasted for 12 months beginning in June 2023, and at minimum, through the three months after the ALJ's March 2024 decision. *See Cutter v. Colvin*, 673 F. App'x 78, 80–81 (2d Cir. 2016) (holding Commissioner erred in failing to consider whether a claimaint could show his impairments could be expected to last for a continuous period of not less than 12 months and incorrectly considered whether plaintiff's impairment existed for the 12 months preceeding the date of the ALJ's decision); *cf. Burnhard v. Walton*, 535 U.S. 212 (2002) (holding that when the impairment has not yet lasted for 12 months and the claimant returns to work at or by the time of adjudication, the SSA's durational requirement is not met).

Nevertheless, the ALJ's misapplication of the durational requirement was harmless error and does not warrant remand. First, the ALJ did not end its disability determination upon finding the durational requirement was not met. Instead, she developed the record on plaintiff's impairments and conducted a full analysis under each step of the five-step process to determine whether plaintiff has a disability within the meaning of the SSA. *See Rushford v. Kijakazi*, No. 23-cv-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) (finding harmless that the ALJ failed to incorporate plaintiff's chronic pain and PTSD into plaintiff's RFC determination because the ALJ considered the

full scope of plaintiff's reported symptoms when finding plaintiff could perform light unskilled work); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding any step two error harmless where the ALJ considered the impairments at subsequent steps); *Roane v. O'Malley*, No. 22-cv-10704, 2024 WL 1357845, at \*5 (S.D.N.Y. Mar. 29, 2024) ("Specifically, when an ALJ identifies some severe impairments at step two, and then proceeds through the sequential evaluation on the basis of the combined effects of all impairments, including those erroneously found to be non-severe, an error in failing to identify all severe impairments at step two is harmless.").

Second, contrary to what plaintiff appears to argue, even if the ALJ found that the medically determinable impairment could be expected to meet the durational requirement, that would not require a finding that an impairment is severe. Satisfaction of the durational requirement is necessary for a finding of severity, but it alone is not sufficient. Instead, to be considered severe, "an impairment or combination of impairments must cause more than minimal limitations in a claimant's ability to perform work-related functions." *Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 276–77 (W.D.N.Y. 2018). Under the SSA, if a claimant has multiple impairments, "the combined effect" of the impairments collectively must be assessed "without regard as to whether any such impairment, if considered separately, would be of sufficient severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 267 (N.D.N.Y. 2012). Here, the ALJ assessed plaintiff's severe and non-severe impairments, including the ankle impairment, together at subsequent steps as she was required to do. The ALJ properly considered all impairments in determining plaintiff's disability and in concluding at subsequent steps in the five-step process that plaintiff had the RFC to perform light work. R. 19 ("[T]he undersigned considered all impairments, both severe and non-severe medically determinable

impairments, in reaching the determination herein."); *see Taylor*, 32 F. Supp. 3d at 267–68 (concluding any error in finding impairments as non-severe was harmless because the ALJ concluded other impairments were severe and continued the sequential analysis with plaintiff's severe and non-severe impairments) (listing cases).

Accordingly, the Court finds the ALJ's misapplication of the durational requirement was harmless error and does not warrant remand.

### B. Consideration of Medical Opinions

Plaintiff next argues that the ALJ supplanted her lay conclusions when rejecting consultative examiner Dr. Trimba's opinion that plaintiff's right ankle impairment was mild to moderate. Mot. 16–17. The ALJ concluded that Dr. Trimba's clinical observations only supported a finding that plaintiff's right ankle impairment was mild, not mild to moderate. R. 26–27. The Commissioner argues the ALJ appropriately applied the standard for determining the persuasiveness of a medical opinion—20 C.F.R. §§ 404.1520c(a), 416.920c(a)—and reasonably concluded Dr. Trimba's medical opinion was "somewhat persuasive." Cross-Mot. 15 (citing R. 26–27).

In evaluating medical opinions, an ALJ must assess their persuasiveness, which is based on supportability, consistency, the doctor's relationship with the claimant, the doctor's specialization, and other factors. *See* 20 C.F.R. § 404.1520c(c)(1)–(5). Supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see Rubin*, 116 F.4th at 148. Supportability of a medical opinion "asks asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations." *Evans v. Comm'r of Soc. Sec.*, No. 21-cv-4876, 2023 WL 2667005, at *5 (E.D.N.Y. Mar. 28, 2023).

The consistency inquiry of a medical opinion is assessed through "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Daniels*, 617 F. Supp. 3d at 189–91 (finding the ALJ adequately evaluated the medical opinion of a treating dentist where the ALJ's explaination, although brief, examined the supportability of the dentist's opinion noting the opinion was "less relevant" given that dentist was not a neurologist or an internist, who were better qualified to assess plaintiff's neuropathetic pain, and examined the consistency of the dentist's opinion with other evidence in the record to find its persuasive value was lessened by its inconsistency with plaintiff's activities).

The ALJ must "explain how [s]he considered supportability and consistency as applied to each medical source's opinion in [her] determination or decision." *Rubin*, 116 F.4th at 148. Although an "explanation need not be exhaustive," a court must be able to "glean the rationale of an ALJ's decision." *Chance v. Comm'r of Soc. Sec.*, No. 18-cv-06043, 2019 WL 2123565, at *6 (W.D.N.Y. May 15, 2019); *see Petrie v. Astrue*, 412 F. App'x 401, 406–07 (2d Cir. 2011) (finding no error where the court could glean the rationale of the ALJ's decision from the evidence in the record, and the application of the correct legal standard could lead to only one conclusion). Contrary to plaintiff's contention, the ALJ's conclusion that Dr. Trimba's medical opinion was "only somewhat persuasive" is supported by substantial evidence. R. 27; *see Acevedo v. Saul*, 577 F. Supp. 3d 237, 249–50 (S.D.N.Y. 2021) (finding ALJ's determination that doctor who suggested a four hour-limit on standing and walking was somewhat persuasive because there was no medical evidence in the record for the doctor's conclusion). Here, the ALJ found that

18

Dr. Trimba's opinions were somewhat supported and partially consistent with other medical evidence in the record. R. 27.

After the January 2023 consultative examination, Dr. Trimba concluded plaintiff has "mild to moderate limitations in her ability to stand and walk for a prolonged time." R. 26. However, the ALJ determined, this opinion was contradicted by Dr. Trimba's own clinical observations. R. 26. For example, Dr. Trimba found plaintiff had a normal gait and stance, showed no difficulty rising from a seated position, did not require assistance getting on and off the examination table, had full range of motion of the ankles bilaterally, stable and nontender joints, and 5/5 strength in her lower extremities. R. 26—27; Joint Stip. 12. Based on this, the ALJ reasonably determined that Dr. Trimba's medical "opinion overstates the extent of [plaintiff's] limitations for standing and walking." R. 26. *See Guerriero v. Dudek*, No. 24-cv-03653, 2025 WL 1392561, at *5 (E.D.N.Y. May 14, 2025) (affirming the ALJ's conclusion that doctor's opinion limiting plaintiff to sedentary work was not supported where the opinion was contradicted by the doctor's own medical assessment "noting no change in Guerriero's gait with or without a cane, only minimal foot drop, 5/5 strength in Guerriero's upper *and* lower extremities, intact sensation to light touch, 2+ deep tendon reflexes, and no difficulty getting on and off the exam table").

As to consistency, the ALJ found Dr. Trimba's "normal clinical *obeservations* are medically consistent with the record as a whole." R. 27 (emphasis added); *see, e.g.*, R. 27 ("The environmental and postural limitations are generally consistent with the documented symptoms in the record and her asthma diagnosis."). Indeed, the ALJ incorporated Dr. Trimba's observations and some of her findings into the overall RFC. *Compare* R. 20 *with* R. 884 (findings of Dr. Trimba). However, the ALJ determined Dr. Trimba's medical conclusion—that plaintiff has mild to moderate limitations in her ability

19

to stand and walk for a prolonged time—was only partially consistent with the totality of the evidence in the record. R. 27. While the ALJ's explanation is brief, it is not inadequate. *See Poole v. Saul*, 462 F. Supp. 3d 137, 151 (D. Conn. 2020) (finding the ALJ appropriately assigned little weight to Dr. Wong's opinion because "it was not supported by sufficient documentation of evidence, did not contain clear articulation for the basis of the opinions, and was not consistent with other objective medical evidence of record"). For example, the ALJ's assessment of Dr. Trimba's opinion follows the ALJ's discussion of all other medical opinions, including that of Dr. Schwartz from January 2023 who found plaintiff's lower extremity impairment was non-severe and plaintiff's podiatry treatment notes from mid-2023 showing benign findings. R. 26. Only then did the ALJ determine Dr. Trimba's finding of mild to moderate limitation in standing and walking were inconsistent with subsequent medial treatment evidence in the record.

Further, by determining Dr. Trimba's opinion was somewhat supported and partially consistent, the ALJ did not substitute her judgment in place of competent medical testimony. This is not a case in which an ALJ substituted her own criteria for what was necessary to estabilsh a medical diagnosis, *see Selian*, 708 F.3d at 419–20 (finding the ALJ improperly substituted her own criteria for what was necessary to estabilsh a fibromyalgia diagnosis without support from medical testimony), or where an ALJ isolated a physician's treatment notes to reach an alternative conclusion, *see Volper v. Comm'r of Soc. Sec.*, No. 20-cv-06193, 2022 WL 9449666, at *1–2 (E.D.N.Y. Oct. 14, 2022) (finding the ALJ substituted his own opinion when he isolated "raw medical data" to support a finding of non-disability with the opinion of a medical professional, who after treating claimaint for eighteen months opined claimant was "totally disabled"); *see also Gerald v. Comm'r of Soc. Sec.*, No. 21-cv-00665, 2022 WL 3586557, at *1–2 (E.D.N.Y.

Aug. 22, 2022) (same). The ALJ's determination that "there is no evidence supportive for finding any more than mild limitations," R. 27, was based on an assessment of the record as a whole, and thus, does not demonstrate she substituted her own medical opinion. *Contra Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 162–65 (S.D.N.Y. 2022) (finding ALJ impermissibly substituted his own medical opinion when there was no medical opinion before him to support his conclusion).

Plaintiff argues that the ALJ failed to recognize that Dr. Trimba confirmed plaintiff's diagnosis of bilateral ankle pain, and those observations were consistent with the record. Mot. 17. This argment fails for two reasons. First, it goes towards the ALJ's assessment of plaintiff's credibility rather than Dr. Trimba's medical findings because Dr. Trimba merely recorded plaintff's recitation of her medical history. *See* R. 884 ("4. History of bilateral ankle pain."). Second, plaintiff's argument also ignores Dr. Trimba's other observations, i.e., that plaintiff possessed full range of motion in her ankles. R. 883.

Accordingly, the ALJ's determination as to Dr. Trimba's findings was supported by substantial evidence.

### C. The ALJ's Evaluation of Plaintiff's Subjective Statements of Symptoms

Plaintiff contends that the ALJ erred in concluding that although plaintiff's asthma and right ankle impairment "could reasonably be expected to produce some of the alleged symptoms, . . . [plaintiff's] statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 25; Mot. 18–20. The Commissioner argues the ALJ reasonably and supportably reached her conclusion about plaintiff's subjective complaints. Cross-Mot. 19–22. The Court finds the ALJ properly assessed plaintiff's subjective statements of symptoms.

When determining a claimant's RFC, the ALJ "is required to take the claimant's reports of pain and other limitations into account." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 416.929). The ALJ need not "accept the claimant's subjective complaints without question; [s]he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* SSA regulations provide for a two-step process to assess the credibility of a claimant's testimony. First, the ALJ determines whether the claimant's impairment "could reasonably be expected to produce the symptoms alleged"; second, the ALJ determines whether and to what extent the claimant's reported symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Colombia B.N. v. Comm'r of Soc. Sec.*, No. 21-cv-10622, 2023 WL 358599, at *5–6 (S.D.N.Y. Jan. 23, 2023).

If a claimant provides testimony concerning her symptoms that "is not fully supported by clinical evidence, the ALJ must consider additional factors" to evaluate plaintiff's statements regarding pain. *Jaeckel v. Colvin*, No. 13-cv-04270, 2015 WL 5316335, at *9 (E.D.N.Y. Sept. 11, 2025). Specifically, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1529(c)(3)(i)–(vii), including: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medications taken to address the pain; (5) the treatment, other than medication, that the claimant has received; (6) other measures that the claimant uses to alleviate the pain (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) other factors concerning the claimant's limitations and restrictions as a result of the pain. *See Meadors v. Astrue*, 370 F. App'x 179, 183 n.1 (2d Cir. 2010) (summary order); *see also Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010).

22

If, after considering the claimant's symptoms, related limitations, along with the objective medical evidence, and all other evidence in the record, an ALJ finds that a claimant's testimony is inconsistent "[s]he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Romanelli v. Astrue*, No. 11-cv-04908, 2013 WL 1232341, at *11 (E.D.N.Y. Mar. 26, 2013); *see also Castel v. Saul*, No. 19-cv-5180, 2020 WL 5775668, at *19 (S.D.N.Y. Sept. 1, 2020) ("To the extent the ALJ determines that the claimant's statements are not supported by the medical record, however, the ALJ's decision must include specific reasons for the weight given to the individual's symptoms[,] . . . and the reasons must be clearly articulated[.]"). In other words, an ALJ must clearly articulate "the reasons for any discounting of [a claimant's] statements" concerning their symptoms. *Castel*, 2020 WL 5775668, at *19. *See also* SSR 16-3p (explaining an ALJ must clearly articulate "specific reasons for the weight given" to the complaints that are consistent with and supported by the record such that a reviewing court can assess that evaluation).

Moreover, although an ALJ is not required to "explicitly examine all seven factors" listed in 20 C.F.R. § 404.1529(c)(3), an ALJ's determination of the claimant's symptoms must contain a sufficiently "thorough explanation" such that a reviewing court may "glean" their rationale. *Travis v. Comm'r of Soc. Sec.*, 24-cv-07341, 2025 WL 2157840, at *9 (S.D.N.Y. July 30, 2025). Still, an ALJ is "required to consider" the relevant factors, and her decision must "explain how she balanced those factors." *Adesina v. Astrue*, No. 12-cv-03184, 2014 WL 5380938, at *13 (E.D.N.Y. Oct. 22, 2014) ("When conducting a credibility inquiry, the ALJ is required to consider all of the factors listed in 20 C.F.R. § 404.1529(c)(3) and explain how she balanced those factors."); *cf. Cichocki v. Astrue*,

534 F. App'x 71, 76 (2d Cir. 2013) (summary order) (concluding that the failure to discuss "those factors not relevant to [a claimant's] credibility determination" did not require remand). Where an ALJ "insufficiently applies the credibility factors" or where an ALJ's analysis "fails to refer to or discuss the factors," remand is appropriate. *Travis*, 2025 WL 2157840, at *9; *see also Monroe v. Astrue*, No. 12-cv-01456, 2014 WL 3756351, at *6–7 (E.D.N.Y. July 30, 2014).

Here, the ALJ's assessment of plaintiff's subjective symptom statements is supported by substantial evidence. *See* R. 24–25. The ALJ considered plaintiff's daily activities. For example, in 2022 and 2023, plaintiff reported she cooked independently and once per week, did grocery shopping once every two weeks with her son, engaged in personal grooming such as bathing and dressing herself without assistance, and attended church weekly. R. 22–23. The ALJ outlined in detail evidence of the location, duration, frequency, and intensity of plaintiff's pain and weighed it against the job functions of the positions proposed by VE Vaughn. Despite VE Vaughn testifying that plaintiff could perform some past work, i.e. deli cutter, the ALJ found the record failed to support whether deli cutter could be considered past relevant work. R. 27–28. This finding demonstrates the weight and credence given to plaintiff's statements when determining her capacity to perform work.

The ALJ also compared plaintiff's complaints with medical evidence. R. 24–25. The ALJ found plaintiff's testimony regarding her asthma failed to meet or equal the relevant regulations on chronic respiratory disorders. R. 19 (citing 20 C.F.R. 404, Subpt. P, App'x. 1). Plaintiff contends that she was not required to show hospitalizations. Mot. 19. However, Listings 3.02 and 3.03 provide hospitalizations that meet the requisite frequency are one way of showing the severity of asthma symptoms. 20 C.F.R. 404, Subpt.

24

P, App'x. 1; *see* R. 19–20. Further, the ALJ found that relevant to plaintiff's right ankle impairment, medical treatment notes from 2022 and 2023 indicate plaintiff denied symptoms of leg pain and numbness. R. 24; *see, e.g.*, R. 515–665, 1099–116. The ALJ noted plaintiff sought very little treatment for her right ankle pain until June 2023, which is after the date last insured. R. 25. The podiatrist's physical examination reports showed benign symptoms. R. 25. Plaintiff's podiatry and treatment records do not go beyond June and August of 2023. R. 25. Further, there is no evidence of plaintiff requiring assistive devices for mobility. R. 25.

In sum, the record is clear that the ALJ "meaningfully consider[ed] the full range of § 404.1529(c)(3) factors." *Adesina*, 2014 WL 5380938, at *13; *see* 20 § C.F.R. 404.1529(c)(3). Accordingly, the ALJ's assessment of plaintiff's subjective statements was not erroneous.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is **DENIED**, and the Commissioner's Cross-Motion is **GRANTED**. The Clerk of Court is respectfully directed to enter judgment and close this case.

**SO ORDERED.**

*/s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated:        March 19, 2026
              Brooklyn, New York

25